IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PHL VARIABLE INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>vs.<br><br>THE SHELDON HATHAWAY FAMILY INSURANCE TRUST, by and through its trustee, DAVID HATHAWAY,<br><br>       Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:10-cv-67<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Sheldon Hathaway Family Insurance Trust's Motion to Dismiss[1]. The court held a hearing on the motion on February 2, 2011. At the heating, Plaintiff was represented by Mark Morris and Thomas Hetherington, and Defendant was represented by Willis Orton and Shawn Richards. Having fully considered the motions, memoranda, and exhibits submitted by the parties and the facts and law relevant to this motion, the court enters the following Memorandum Decision and Order.

---

[1]Motion to Dismiss First Amended Complaint ("Motion to Dismiss"), docket no. 22, filed July 28, 2010.

BACKGROUND

The Sheldon Hathaway Insurance Trust ("the Trust") is a trust organized under Utah law.[2] David Hathaway, the sole trustee of the Trust, is a resident of Utah.[3] On December 10, 2007, the Trust and Trustee Hathaway submitted an application to Phoenix for a policy insuring the life of Sheldon Hathaway.[4] The application contained questions about Sheldon Hathaway's financial condition, including his net worth and annual income.[5] The Trust answered these questions by representing that Sheldon Hathaway had a net worth of $6,250,000 and an annual income of $484,500.[6] In addition, the Trust represented that Sheldon Hathaway would fund the payment of premiums on the policy and that there was no understanding that the policy would be transferred or sold to a third party.[7] PHL Variable Insurance Company ("PHL") approved the Trust's application and issued to the Trust a policy with a death benefit of $4,000,000, effective January 31, 2008.[8]

PHL now contends that the statements made concerning Sheldon Hathaway's financial situation and the funding of the premiums were false.[9] PHL claims that an independent investigation revealed that these statements were false and that the policy would not have been

---

[2] First Amended Complaint for Declaratory Judgment ("First Amended Complaint") at 3, docket no. 15, filed June 30, 2010.

[3] *Id.* at 4.

[4] *Id.* at 5.

[5] *Id.*

[6] *Id.* at 6.

[7] *Id.*

[8] *Id.* at 7.

[9] *Id.*

issued if PHL had known the truth.[10]  Seeking to rescind the policy, PHL filed suit on January 28, 2010[11] and amended the complaint on June 30, 2010.[12]  PHL seeks to recover under multiple theories, including fraud, material misrepresentation, and lack of insurable interest.[13]  PHL seeks rescission of the policy and monetary damages, including retention of the premiums paid on the policy.[14]

DISCUSSION

In the motion before the court, the Trust argues that the complaint should be dismissed for several reasons.  First, the Trust argues that the complaint is too speculative and conclusory to satisfy Federal Rule of Civil Procedure 8(a)(2).[15]  The Trust contends that PHL does not provide enough facts to raise the complaint to the level required by Rule 8(a)(2).[16]  Second, the Trust argues that the fraud allegations are not plead with particularity as required by Rule 9(b).[17]  Third, the Trust argues that PHL failed to contest the policy within the time permitted by the Utah contestability statute.[18]  The Trust contends that the contestability statute requires an investigation beyond that which PHL alleges was conducted and that PHL's suit is merely a

---

[10] *Id.* at 7.

[11] Complaint for Declaratory Judgment, docket no. 1, filed Jan. 28, 2010.

[12] First Amended Complaint.

[13] *Id.* at 8-10.

[14] *Id.* at 8.

[15] Memorandum in Support of Motion to Dismiss First Amended Complaint ("Support Memorandum") at 8, docket no. 23, filed July 28, 2010.

[16] *Id.* at 8-11.

[17] *Id.* at 4-5.

[18] *Id.* at 12.

fishing expedition to gain access to discovery.[19]  Finally, the Trust argues that the election of remedies doctrine forbids PHL from suing for rescission and seeking monetary damages at the same time.[20]

## Rule 8(a)(2)

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief".[21]  This requires that the complaint set forth sufficient factual allegations that suggest a plausible claim and are not merely consistent with liability.[22]  A pleading contains sufficient allegations to make a claim plausible when the court, assuming the alleged facts to be true, can reasonably infer the liability of the defendant.[23]  These facts must be specific enough to put the defendant on notice of the conduct alleged given the context of the sort of case before the court.[24]

PHL's complaint is sufficient to satisfy Rule 8.  PHL alleges that the signers of the life insurance application provided false information about Sheldon Hathaway's net worth, annual income, and intent to pay the premiums on the life insurance policy.  Because the court must accept well pleaded facts as true on a motion to dismiss, the inference that the Trust committed fraud or material misrepresentation follows naturally.  The Trust is on notice as to the nature of the dispute and is free to present evidence that the statements on the application were true.  PHL

---

[19] *Id.* at 13.

[20] *Id.* at 14.

[21] Fed. R. Civ. P. 8(a)(2).

[22] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[23] *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1248 (10th Cir. 2008).

[24] *Id.*

is not making the generic accusation of wrongful conduct frowned upon by the Supreme Court in *Twombly*.[25] Rather, PHL asserts that the Trust made specific misrepresentations on a specific document with specific consequences. If these facts are true, it is plausible that the Trust is liable. Therefore, the First Amended Complaint satisfies Rule 8(a)(2).

The Trust argues that PHL fails to plead facts that would support a finding that no insurable interest existed at the time of the application.[26] The Trust cites the Tenth Circuit's decision in *American Casualty Company v. Rose*[27] for the proposition that an insured (in this case, Sheldon Hathaway) may insure his own life for the benefit of a person or group of his own choosing.[28] This case is distinguishable because PHL does not allege that Sheldon Hathaway purchased the policy, but that the Trust did.[29] PHL further alleges that Sheldon Hathaway never made the payments on the policy, despite the statement to the contrary on the application.[30] Assuming these facts are true, they clearly give rise to the inference that the policy was procured without a legitimate insurable interest at the time of the application.

The Trust further claims that pertinent amendments to the Utah insurable interest statute came after the issuance of the policy and do not govern the policy in this case.[31] However, PHL's argument is that Sheldon Hathaway did not procure the policy, but the Trust did. Furthermore,

---

[25] *See Twombly*, 550 U.S. at 565; *Robbins*, 519 F.3d at 557.

[26] Support Memorandum at 9.

[27] *American Cas. Co. v. Rose*, 340 F.2d 469, 471 (10th Cir. 1964).

[28] *Id.* at 10.

[29] First Amended Complaint at 5.

[30] *Id.* at 7.

[31] Support Memorandum at 9.

Utah courts are well settled in holding that life insurance contracts without an insurable interest are void.[32] The fact that the Utah legislature chose to amend the insurable interest statute after the issuance of this policy does not suggest that such wagering contracts were legal in Utah before the amendments.

### Rule 9(b)

Rule 9(b) requires that a complaint alleging fraud must "state with particularity the circumstances constituting fraud."[33] To satisfy this requirement, a complaint "must describe the specific representations which are allegedly fraudulent, the particular defendant who made the misrepresentations, and the falsity of the representations."[34]

The First Amended Complaint meets Rule 9(b)'s requirements. The complaint alleges that the signers of the application falsely and fraudulently represented on the application that Sheldon Hathaway's net worth was $6,250,000, that his annual income was $484,000, and that Sheldon Hathaway would pay the premiums on the policy. Rule 9(b) exists in order to give the defendant a clear idea of what fraud is being alleged, allowing for a proper defense.[35] The allegations here meet that objective. Defendants have notice that the alleged misrepresentations were made by the signers of the application, the date the application was submitted, and the specific statements in the application that PHL claims were false. The statements adequately allow Defendants to admit or deny the allegations in a responsive pleading and conduct discovery on the claims.

---

[32] *Commercial Travelers' Ins. Co. v. Carlson*, 137 P.2d 656, 59-60 (Utah 1943).

[33] Fed. R. Civ. P. 9(b).

[34] *Armani v. Maxim Healthcare Servs., Inc.*, 53 F. Supp. 2d 1120, 1130 (D. Colo. 1999).

[35] *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 777 (7th Cir. 1994).

Utah's Contestability Statute

Under Utah law, "a life insurance policy is incontestable after the policy has been in force for two years from the policy's date of issue."[36] The meaning of a contest was stated by the Utah Supreme Court in *Tracy Loan and Trust Co. v. Mutual Life Insurance Co.*, in which the court held that a contest begins when suit is filed in court.[37] Under that standard, PHL clearly meets the statutory requirement, as suit was filed on January 28, 2010, three days before the expiration of the contestability period.

The Trust contends that in order to satisfy the contestability statute, PHL has a duty to investigate the claims "and discover facts justifying rescission prior to the end of the two year period."[38] The Trust cites several cases that allude to an insurance company's obligation to contest within the statutory period. However, the Trust cites no case that implies a duty to conduct any sort of investigation. To the contrary, *Tracy* clearly defines a contest as a lawsuit, not an investigation of undisclosed intensity.[39]

The Trust protests that an investigation is required because insurance companies could otherwise file lawsuits within the contestability period and use discovery as a fishing expedition to determine if they would like to rescind the policy.[40] This is precisely the concern that underlies Rules 8 and 9: complaints are not meant to be a license to conduct discovery and

---

[36] Utah Code Ann. §31A-22-403(2)(b).

[37] *Tracy Loan and Trust Co. v. Mutual Life Ins. Co.*, 7 P.2d 279, 280-81 (Utah 1932).

[38] Support Memorandum at 12.

[39] *Tracy*, 7 P.2d at 280.

[40] Support Memorandum at 12.

discover unknown wrongs.⁴¹ However, PHL's complaint in this case meets the requirements of Rules 8 and 9 and therefore satisfies this concern. In *Tracy*, the Utah Supreme Court has clearly interpreted the contestability statute to require only a lawsuit and that holding is dispositive of the Trust's argument.⁴² Moreover, PHL's complaint specifically states that PHL conducted an investigation into the veracity of the statements in the application and the results of that investigation indicated that the statements were false.

Election of Remedies

The Trust contends that the doctrine of election of remedies precludes PHL from seeking both rescission and monetary damages.⁴³ The Trust cites recent decisions in the District of Delaware to support this conclusion. However, Utah law clearly permits both rescission and monetary damages in certain cases where fraud is alleged.⁴⁴ It is unnecessary and inappropriate to decide at this time whether the Trust would be subject to monetary damages and rescission if held liable: it is enough to observe that Utah law does not preclude the granting of both as a matter of law. Therefore, PHL's demand for rescission and monetary damages cannot be dismissed at this time.

---

⁴¹ *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1ˢᵗ Cir. 2004).

⁴² *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

⁴³ Support Memorandum at 14.

⁴⁴ *Ong Int'l v. 11ᵗʰ Ave. Corp.*, 850 P.2d 447, 457 (Utah 1993).

ORDER

For the reasons above, the Sheldon Hathaway Insurance Trust's Motion to Dismiss First Amended Complaint is DENIED.

DATED this 18th day of February, 2011.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge