IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PHL VARIABLE INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br><br>THE SHELDON HATHAWAY FAMILY INSURANCE TRUST, by and through its trustee, DAVID HATHAWAY,<br><br>Defendant.<br><br>WINDSOR SECURITIES, LLC, a Nevada Limited liability company,<br><br>Intervenor Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL**<br><br>Case No. 2:10-cv-00067-DAK-DN<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge David Nuffer |

The magistrate judge, on referral under 28 U.S.C. §636(b)(1)(A), is considering two motions to compel filed by the intervenor seeking additional answers to interrogatories and responses to production requests.[1]

**Facts of this Case**

PHL Variable Life Insurance Company (PHL) filed this lawsuit against Defendant Sheldon Hathaway Family Insurance Trust (Hathaway Trust) claiming that Hathaway Trust had misrepresented its financial condition in connection with an insurance policy application.[2] PHL seeks rescission of the $4,000,000 life insurance policy and damages arising from Hathaway

---

[1] Windsor Securities, LLC's Motion to Compel Appropriate Answers to Written Discovery and Production of Documents, docket no. 71, filed September 7, 2011; Intervenor Defendant Windsor Securities, LLC's Second Motion to Compel Production of Documents, docket no. 82, filed October 4, 2011.

[2] Memorandum in Support of Windsor's Motion to Compel Appropriate Answers to Written Discovery and Production of Documents (Supporting Memorandum 72) at 2, docket no 72, filed September 7, 2011.

Trust's alleged fraud in the procurement of the policy.[3] Intervenor Defendant, Windsor Securities, LLC (Windsor) was granted intervention on April 13, 2011.[4] Windsor, a third which financed the Policy's premiums, obtained a security interest in the policy by $215,000 loan to Hathaway Trust to finance the premiums.[5]

PHL alleges Hathaway Trust made material representations in applying for the insurance policy in December 2007.[6] The alleged misrepresentations are that Hathaway Trust possessed a net worth of $6,250,000 and an annual income of $484,500; that the insurance premiums would not be financed; and that no third party would obtain an interest in the policy.[7] PHL alleges it relied on these representations in issuing the policy in January 2008. After PHL discovered Hathaway's actual net worth, annual income, and source of premiums, PHL sought to rescind the policy for both material misrepresentation and lack of an insurable interest.[8]

Hathaway Trust and Windsor claim no such fraud occurred.[9] Further, Hathaway Trust and Windsor claim PHL knew of its agents' practices used in gathering information to complete insurance applications; that its agents knew the truth of the insured's financial conditions; and that even if the insured's representations were false as it now claims, PHL nonetheless allowed the policy to be written, the premium to be paid and

---

[3] Plaintiff's Memorandum in Opposition to Intervenor Defendant's Motion to Compel Appropriate Answers to Written Discovery and Production of Documents (Opposition Memorandum 80) at 2, docket no 80, filed September 28, 2011.

[4] Order Authorizing Windsor Securities, LLC to Intervene as Defendant, docket no 44, filed April 13, 2011.

[5] Opposition Memorandum 80 at 3.

[6] *Id.* at 2.

[7] *Id.*

[8] *Id.* at 2-3.

[9] Supporting Memorandum 72 at 2.

commissions disbursed to persons or entities not parties to this lawsuit.[10] Windsor claims that PHL did not reasonably rely on the representations of the insured and, therefore, PHL's claims for rescission fail, or that those claims have been waived, PHL is estopped, or those claims are otherwise barred by law.[11]

**Discovery Dispute**

On May 13, 2011 Windsor served PHL with the first set of interrogatories and first first requests for production of documents.[12] PHL's objections to these requests were served July served July 15, 2011.[13] Windsor sent a letter to PHL on July 29, 2011, asking PHL to properly amend and supplement its responses. Windsor's counsel sent a follow-up letter on August 12, 2011 and another follow-up email on September 1, 2011.[14]

**Meet and Confer**

PHL claims that these discovery issues were never fully aired between the parties and that no phone calls were made to discuss them.[15] Under Federal Rule of Civil Procedure 37(a), a motion to compel must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[16] The local rules restate and add to this requirement, stating that the court will

> not entertain any discovery motion . . . unless counsel for the moving party files with the court, at the time of filing the motion, a statement showing that the attorney making the motion has made a reasonable effort to reach agreement with

[10] *Id.*

[11] *Id*.

[12] *Id.* at 3.

[13] *Id.*

[14] *Id.*

[15]Opposition Memorandum 80 at 3-4.

[16] Fed. R. Civ. P. 37(a).

> opposing attorneys on the matters set forth in the motion. Such statements must recite, in addition, the date, time, and place of such consultation and the names of all participating parties or attorneys.[17]

Windsor's efforts to confer with the PHL include a letter on July 29, 2011, a letter on August 12, and an email to counsel on September 1, 2011.[18] These efforts are

**DISCUSSION**

Interrogatories 5 and 6 go to the scope and scale of PHL's business and set up a basic perspective for the history of PHL's treatment of financed policies. Responding to interrogatories as modified should not be overly burdensome for PHL. However, Interrogatory 5 will be restricted to a more relevant time frame. Additionally, to resolve the privacy concerns with Interrogatory 6, it will be limited to request the *number* of policies instead of requiring PHL to name the *owners* of such policies.

PHL must fully answer Interrogatory 5 as outlined below:

> Set forth for each year between 2003 and 2008, the number of single-life policies with a face amount of $4 million or more insuring persons age 75 or older issued by you.

PHL must fully answer Interrogatory 6 as outlined below:

> At any time between 2000 and the present, did you issue life insurance policies involving premium finance where under the terms of the loan the sole recourse of the lender was to take ownership control of the policy so that the borrower had no liability to the lender other than loss of the policy? If yes, describe the premium finance programs, identify the number of policies, an identifying number and dates these policies were issued, and state when and why you decided to cease issuing policies on which premiums were paid through such programs.

Responses to Interrogatories 8 and 9 will help understand agency relationships within PHL and raise explore issues of imputed knowledge but Interrogatory 8 will be limited to Utah and California and restricted to a more relevant time frame.

---

[17] DUCivR 37-1(a).

[18] Exhibits A1-A3 attached to Reply Memorandum in Further Support of Windsor's Motion to Compel Appropriate Answers to Written Discovery and Production of Documents, docket no. 85-2, filed October 13, 2011.

PHL must fully answer Interrogatory 8 as outlined below:

> Describe the procedure for the years 2003-2008 by which a life insurance producer was appointed by you in California and Utah.

PHL must fully answer Interrogatory 9 as outlined below:

> Describe the procedure by which you appointed Giordano as your producer and set forth any difference in the procedures you utilized to appoint Giordano from procedures described in your response to Interrogatory 8.

PHL objects to Interrogatory 10 as vague, overly broad, unduly burdensome, irrelevant, and available in the public domain. However, this interrogatory goes to the scope and scale of the case. Additionally, while this information could be found in the public domain, finding this information would be much easier for PHL, as the information is within its control but scattered across the state and federal court systems. However, the interrogatory is limited to dates that are within a more relevant time frame. PHL must fully answer Interrogatory 10 as outlined below:

> Identify each and every lawsuit by stating the name of the action, the jurisdiction, the case number, and the identities of counsel, in which you have sought to rescind life insurance policies issued between the years of 2005 and 2010, based on alleged lack of insurable interest or a claim that the insured misrepresented financial position, income or existence of a premium finance arrangement.

**Requests for Production**

PHL has sufficiently responded to Request 7, the underwriting for the insurance policy, which has been identified as PHL/HATHAWAY 1-272.[19]

Request 15 goes to the relationship of the alleged agents and activities of PHL which are directly at issue. Further, responding to this request will not be unduly burdensome and the need for this information outweighs any potential privacy concerns, which can also be handled by compliance with the Protective Order.[20] PHL must produce in response to Request 15 as written.

[19] Opposition Memorandum 80 at 13.

[20] Order Granting Stipulated Motion for Protective Order, docket no. 67, filed August 22, 2011.

Request 32 properly seeks to discover PHL's actions in the market with respect to similar insureds, which are pertinent to PHL's practices and standards of evaluation. PHL must produce in response to Request 32 as limited below:

> All market conduct examinations of you performed by any insurance regulators dated or created between 2004 and 2010 to the extent that they concern your underwriting or claim handling concerning life insurance policies issued by you with a face amount of $4 million or more insuring persons age 75 or older.

Request 41 seeks information which would reflect PHL's treatment of its employees related to the specific policy at issue. The privacy issues can be handled by compliance with the Protective Order. Whatever the volume of this material, it is directly pertinent to the claims in this case. PHL shall respond to Request 41 as written.

PHL objects to further identification of electronic materials produced in response to Requests 11, 12, 25, and 29. While PHL argues that *Adams v. Fujitsu*[21] does not require PHL to further organize documents, the facts in *Adams* were different. In *Adams*, the moving party – not the requesting party, but another co-party – argued that the producing party did not produce records as they were kept in the ordinary course of business. However, "parties that attended the document production seem to be sufficiently satisfied with the organization of Adam's production" and concluded that "to require Adams to go back and reproduce voluminous documents [just for the movant] is a burden that likely will outweigh the anticipated benefit."[22] Further, there was apparently no easily identifiable organizational structure in which the files were maintained.[23]

---

21 *Phillip M. Adams & Associates, L.L.C. v. Fujitsu Ltd.*, No. 1:05-CV-64 TS, 2010 WL 1901776 (D. Utah May 10, 2010).

22 *Id.* at *5.

23 *Id.* at *2.

This production is an original production. The burden for PHL to identify electronic folders is not so great as to outweigh the benefit of having provenance information available to Windsor. While PHL claims that its ordinary course of business is to maintain files and records electronically, as opposed to in boxes and file folders, electronic records are organized in some manner, just like paper files. The phrase "as kept in the ordinary course of business" means producing documents in the "file folder in which they are kept and/or otherwise so that the discovering party can look at the documents as they are stored in context."[24] There is no reason to exclude electronic file folders from the definition of "file folder." Thus, PHL must specifically identify which documents are produced in response to Requests 11, 12, 25, 29 and the electronic "folder" (computer, drive and directory) locations of the documents.[25]

---

[24] *Klein-Becker USA, LLC v. Englert*, No. 2:06-CV-378-TS, 2007 WL 677707, *2-3 (D. Utah Feb 28, 2007).

[25] Exhibit A to Intervenor Defendant Windsor Securities, LLC's Memorandum in Support of its Second Motion to Compel Production of Documents, docket no. 83, filed October 4, 2011.

> Request 11: All documents that concern costs and expenses that you have incurred in underwriting and/or issuing the Policy.
>
> Request 12: All documents that concern costs and expenses that you have incurred in investigating the validity of the representations make in the Hathaway Life Insurance Application, The Hathaway SOCI Form, and/or the Policy subsequent to December 10, 2007.
>
> Request 25: All communications and/or documents concerning communications between you (or any person acting on your behalf, including without limitation your attorneys) and: a) Sheldon Hathaway or anyone acting on his behalf; including without limitation his attorney(s); b) The Trust; c) Sullivan or anyone acting on his behalf including without limitation his attorney(s); and./or d) Giordano anyone acting on its behalf, including without limitation its attorney(s).
>
> Request 29: A copy of each different type of contract between you and your producers in effect between 2004 and 2009.

**ORDER**

The motions[26] are GRANTED and DENIED in part as described above. Attorney's Fees and Costs are DENIED. Responses shall be made within 28 days of this order.

Dated March 14, 2012.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge

[26] Docket nos. 71 and 82.