Mark O. Morris (4636)
Snell & Wilmer, L.L.P.
Attorneys for PHL Variable Life Insurance Company
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800

OF COUNSEL:
(*admitted pro hac vice*)
Edison, McDowell & Hetherington LLP
Thomas F.A. Hetherington, Texas Bar No. 24007359
Jessica L. Wilson, Texas Bar No. 24028230
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, TX 77027
Telephone: (713) 337-5580
Facsimile:  (713) 337-8850

Attorneys for PHL Variable Life Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PHL VARIABLE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>THE SHELDON HATHAWAY FAMILY INSURANCE TRUST, by and through its trustee, DAVID HATHAWAY,<br><br>    Defendant,<br><br>WINDSOR SECURITIES, LLC, a Nevada Limited liability company,<br><br>    Intervenor Defendant. | **PLAINTIFF'S OBJECTION TO MAGISTRATE'S MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART WINDSOR'S MOTIONS TO COMPEL (DKT. 96)**<br><br>Case No. 2:10-cv-00067-DAK-DN<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff PHL Variable Insurance Company ("PHL"), by and through the undersigned attorneys, and pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and DUCivR 72-3, respectfully submits its Objection to the Magistrate's Memorandum Decision and Order Granting in Part and Denying in Part Windsor Securities, LLC's Motions to Compel (the "Objection").

## I. INTRODUCTION

This Court should sustain PHL's Objection to portions of the Magistrate Judge's[1] Corrected Memorandum Decision and Order Granting in Part and Denying in Part Motion to Compel (the "Order") (Dkt. 96). PHL does not object to the majority of the Order, and intends to comply with it by April 16, 2012, as ordered by the Magistrate. As to two discovery requests propounded by an intervening party, Windsor Financial Services, LLC ("Windsor"), however, this Court should amend the Order.

This case is a simple one between PHL and the owner of a single fraudulently procured life insurance policy. Windsor, an undisclosed financier of policy premiums, has injected itself into this litigation and has repeatedly sought overly broad, burdensome, and irrelevant discovery in an attempt to uncover some imagined nationwide scheme by PHL to trick insureds into obtaining policies and then retaining the premiums upon rescission of those policies. Windsor's counsel represents many such undisclosed premium financing companies, and is using this case as a means of gathering information and documents with no bearing in this case, but in hopes of obtaining information it might use against PHL and other insurers in unrelated litigation across

---

[1] Magistrate Nuffer recused himself from this case on March 20, 2012. *See* Dkt. 97.

the country.  The portions of the Order permitting this type of discovery are clearly erroneous and this Court should sustain PHL's objection to them.

In addition to the defects arising from their seeking information outside the scope of this case, the two requests at issue in this Objection are also so poorly drafted that compliance is impossible.  As discussed more fully below, Interrogatory 6 and Request for Production 32 not only request irrelevant information, but also are worded in such a way as to make compliance impossible or, at the least, unduly burdensome.  The Order's compelling of responses to these requests was clearly erroneous.  For these reasons, PHL requests this Court amend the Order to sustain PHL's objections as to Interrogatory 6 and Request for Production 32, and rule that PHL need not respond to them.

**A.   Relevant Procedural Background**

Windsor filed its Motion to Compel Appropriate Answers to Written Discovery and Production of Documents ("Windsor's First Motion to Compel") on September 7, 2011.  *See* Dkt. 71.  PHL responded to Windsor's First Motion to Compel on September 28, 2011 (Dkt. 80), and Windsor filed a reply in support thereof on October 13, 2011  (Dkt. 85).  Windsor filed a Second Motion to Compel Production of Documents on October 4, 2011 ("Windsor's Second Motion to Compel").  *See* Dkt. 82.  PHL responded to Windsor's Second Motion to Compel on October 21, 2011 (Dkt. 87), and Windsor filed its reply in support thereof on November 7, 2011 (Dkt. 88).

The Order requires PHL to provide supplemental responses to Interrogatories 5, 6, 8, 9, and 10, and Requests for Production 11, 12, 15, 25, 29, 32, and 41.  While PHL is preparing

supplemental responses to Windsor's discovery requests, this Court should sustain its objections to Interrogatory 6 and Request for Production 32.

### B.     Factual Background

Sheldon Hathaway and the Sheldon Hathaway Family Insurance Trust (the "Trust") submitted a life insurance application to PHL in December 2010. The application contained many representations. Specifically, Mr. Hathaway and the Trust alleged Mr. Hathaway possessed a net worth of $6,250,000, annual income of $484,500, that the insurance premiums would not be financed, and that there was no pre-existing agreement or understanding that any third party would obtain an interest in the Policy. *See* Dkt. 15, ¶¶ 21-22. In reliance upon these representations, PHL issued a $4,000,000 life insurance policy, PHL policy number 97526533 (the "Policy"), to the Trust.

Sometime thereafter, PHL uncovered evidence indicating the representations contained within the Policy's application were false. Specifically, PHL learned Mr. Hathaway and the Trust misrepresented Mr. Hathaway's net worth, annual income, source of the Policy's premiums, and whether any third party had an interest in the Policy. Windsor's intervention here confirmed PHL's suspicions. Upon discovery of these misrepresentations, PHL filed its Complaint for Declaratory Judgment[2] against the Trust seeking judicial rescission of the Policy and damages arising from the Trust's misrepresentations in the procurement of the Policy. *See* Dkt. 1. Mr. Hathaway and the Trust intentionally and/or negligently misrepresented material information to PHL, including the source of the premiums, in order to induce PHL to issue an illegal wagering contract on Mr. Hathaway's life.

---

[2] PHL filed its First Amended Complaint for Declaratory Judgment against the Trust on June 30, 2010. *See* Dkt. 15.

## II. DISCUSSION

### A. Legal Standard

#### 1. *Discovery Standard*

Discovery is limited by the Federal Rules of Civil Procedure to "any non privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Discovery must be drafted in such a manner that is "reasonably calculated to lead to the discovery of relevant information or admissible evidence." *James v. Frank's Westates Servs., Inc.* No. 2:07-cv-937-DB-PMW, 2008 WL 2714206, at *3 (D. Utah July 10, 2008) (unpublished) (citing FED. R. CIV. P. 26(b)(1)). Parties may not conduct a fishing expedition in an attempt to obtain evidence to support their claims or defenses. *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169 (10th Cir. 2000) (internal citations omitted).

#### 2. *Objection Standard*

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, a party may serve and file objections to [a magistrate's] order within 14 days after being served with a copy." FED. R. CIV. P. 72(a). When the order relates to a matter not dispositive of any party's claims, "the district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A) (a district court may "reconsider any pretrial matter under this subparagraph (A) [pre-trial matters not dispositive of the dispute] where it has been show that the magistrate judge's order is clearly erroneous or contrary to law.").

### B. Windsor's Interrogatory 6

Windsor's Interrogatory 6 originally read as follows:

5

> At any time between 2000 and the present, did you issue life insurance policies involving premium finance where under the terms of the loan the sole recourse of the lender was to take ownership control of the policy so that the borrower had no liability to the lender other than the loss of the policy?
>
> > (a) If yes, describe the premium finance programs, identify the owners of the policies, and state when and why you decided to cease issuing policies on which premiums were paid through such services.

*See* Dkt. 72-2, p. 6.  PHL objected to Interrogatory 6 on numerous grounds.  Specifically, PHL noted that the Interrogatory was:

> overly broad, unduly burdensome and not reasonably limited in time or scope in that to answer such Interrogatory would require [PHL] to review every policy issued for a period of over ten years and determine whether such a policy met the criteria of this Interrogatory.  Further, this Interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  [PHL] further objects to this Interrogatory because responding to it could potentially cause [PHL] to violate the privacy rights of some of its insureds.

*See* Dkt. 72-2, p. 6.

Upon review of Windsor's Motions to Compel and PHL's responses thereto, the Magistrate amended Interrogatory 6 to read as follows:

> At any time between 2000 and the present, did you issue life insurance policies involving premium finance where under the terms of the loan the sole recourse of the lender was to take ownership control of the policy so that the borrower had no liability to the lender other than the loss of the policy?  If yes, describe the premium finance programs, identify the number of policies, an identifying number and dates these policies were issued, and state when and why you decided to cease issuing policies on which premiums were paid through such policies.

*See* Dkt. 96, p. 4.[3]  The Magistrate notes in his Order that Interrogatory 6 goes "to the scope and scale of PHL's treatment of financed policies."  Dkt. 96, p. 4.  PHL's treatment of financed

---

[3] The only substantive change the Magistrate made to Interrogatory 6 was not requiring PHL disclose the name of various policies' owners.  *See* Dkt. 96, p. 4.  This change was made to "resolve [PHL's] privacy concerns with Interrogatory 6."  *Id.*  The Magistrate did not, however, address PHL's other objections.

policies, however, is *not* relevant to *this* case because the Trust submitted a life insurance application that affirmatively stated it was *not* using "non-recourse premium financing or any other method [] to pay premiums in order to facilitate a current or future transfer, assignment, or other action with respect to the benefits provided under the policy being applied for."  Dkt. 80, p. 8; *see also* Policy Application, Dkt. 23-2, p. 27.  In addition, Mr. Hathaway and the Trust submitted a separate Statement of Client Intent form with the Policy's application stating neither Mr. Hathaway nor the Trust intended to finance the Policy's premiums.  *See* Dkt. 80, p. 8; *see also* Statement of Client Intent, attached hereto as Exhibit A.

As a result of Mr. Hathaway's and the Trust's purposeful obfuscation of the financed premiums in this case, PHL issued the Policy having no awareness that the premiums were financed.  For this reason, providing information about policies in which premium financing *was* disclosed (and of which PHL had awareness) is not relevant to the Trust's affirmative defenses of waiver, estoppel, bad faith, and unclean hands, *see* Dkt. 72, p. 7, which require disclosure and purposeful disregarding of non-recourse premium financing.

In addition to being irrelevant, it is extremely difficult, if not impossible, for PHL to answer this Interrogatory as drafted.  In late 2005, the life insurance industry became increasingly aware of stranger-owned life insurance schemes.  As part of the industry response to this, PHL began requiring (1) the disclosure of premium financing; (2) an insured with "skin in the game" (non-recourse loans were not permitted); and (3) financing by approved lenders only.  Prior to this time, PHL did not specifically inquire about premium financing on application materials.  As such, without undertaking a comprehensive investigation of the thousands of policies issued between 2000 and 2005 to determine whether one of the hundreds of thousands of

7

pages in the policy files contain some affirmative notation that PHL learned of premium financing post-issuance, an extremely disproportionate and expensive burden, PHL has no way of answering Interrogatory 6.

For applications processed between 2006 and 2010, PHL would be aware of responsive policies only if premium financing had been disclosed during the application process. It is at least likely, however, that many applications processed between January 2006 and 2010 misrepresented the (non-) existence of premium financing, just as Mr. Hathaway and the Trust did in this case, so that a policy could be obtained without PHL delving into the specifics of the financing arrangement and possibly rejecting the application. In this case, for instance, the premium financing was not disclosed, was not provided by an approved financing company, and was not non-recourse.

Finally, PHL believes that Windsor already possesses information responsive to Interrogatory 6 because PHL previously produced documents related to how applications were processed during this time period and which premium financing programs were approved by PHL. In addition, as ordered by the Magistrate, PHL will be producing a list of "each and every lawsuit . . . in which [PHL has] sought to rescind life insurance policies issued between the years of 2005 and 2010, based on alleged lack of insurable interest or a claim that the insured misrepresented financial position, income or existence of a premium finance arrangement." Dkt. 96, p. 5. PHL suggests that any post-issuance information learned about undisclosed premium financing, at least for policies issued in the 2005 to 2010 timeframe, is available to Windsor by reviewing the pleadings in cases referenced in response to Interrogatory 10. This is a burden Windsor could undertake as easily as PHL. This approach strikes a balance between giving

Windsor the full information it requests and unduly burdening PHL with tracking down and disclosing information that is irrelevant to the dispute before the Court.

This Court should sustain PHL's Objection and amend the Order as to Interrogatory 6, rule that PHL's objections to that Interrogatory are sustained, and that no further response to that Interrogatory is appropriate or necessary.

### C. Windsor's Request for Production 32

Windsor's Request for Production 32 suffers from similar defects, and originally requested:

> All market conduct examinations of you performed by any insurance regulators dated or created between 2004 and 2011 to the extent that they concern your underwriting, claim handling or other decisions concerning life insurance policies issued by you with a face amount of $4 million or more insuring persons age 75 or older.

Dkt. 72-3, p. 17.  PHL objected to this request on the grounds that:

> [Request for Production 32] [w]as overly broad and unduly burdensome as it lacks specificity and is not reasonably limited in time or scope.  [PHL] further objects on the ground that [Request for Production 32] seeks documents and information that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence because nothing in [Request for Production 32] relates to the Policy, [Mr.] Hathaway, or the Trust.

*Id.*

As was the case with Interrogatory 6, the Magistrate amended Request for Production 32. Request for Production 32 now requires PHL to produce:

> All market conduct examinations of you performed by any insurance regulators dated or created between 2004 and 2010 to the extent that they concern your underwriting or claim handling concerning life insurance policies issued by you with a face amount of $4 million or more insuring persons age 75 or older.

Dkt. 96, p. 6 (changing 2011 to 2010, and deleting "or other decisions"). In compelling the production of such market conduct examinations, the Magistrate believes "PHL's actions in the market with respect to similar insureds . . . are pertinent to PHL's practices and standards of evaluation." *See* Dkt. 95, p. 6. Request for Production 32, however, goes well beyond the scope of any documents that would be relevant to the dispute before this Court.

As crafted, PHL is required to produce market conduct examinations regardless of the state insurance regulator performing the examination. Market conduct examinations, however, are typically state specific. For example, a 2004 market conduct examination performed by the Utah Insurance Department reveals that the "purpose of the [market conduct] examination was to determine [an insurance company's] compliance with the *Utah* Insurance Code (U.C.A. 31A), and Rules promulgated by the *Utah* Insurance Department as contained in the *Utah* Administrative Code (U.A.C.) applicable to U.C.A. 31A, as pertains to the [insurance company's] form filing practices in the life insurance market." *See* State of Utah Insurance Department Report of Market Conduct Examination of Beneficial Life Insurance Company (emphasis added), attached hereto as Exhibit B. Similarly, a recent market conduct examination conducted by the State of California reveals that the market conduct examination was "made to discover, in general, if these and other operating procedures of the [investigated insurance company] conform to the contractual obligations in the policy forms, the *California* Insurance Code (CIC), the *California* Code of Regulations (CCR) and case law." *See* State of California Department of Insurance Report of the Market Conduct Examination of the Claims Practices of Globe Life and Accident Insurance Company, et al. (emphasis added), attached hereto as Exhibit C.

In this case, the Policy was issued on the life of a Utah resident, to an entity registered in the state of Utah, and is governed by Utah law. Thus, any market conduct examination reflecting PHL's handling of life insurance policies governed by the laws of any state other than Utah is and should be irrelevant to the issues before this Court.

In addition, it is impossible for PHL to respond to the Request as drafted because it is unclear what documents Windsor seeks. Specifically, Request for Production 32 demands PHL produce "all market conduct examinations." Dkt. 96, p. 6. It is unclear whether this refers to a letter from an insurance regulator announcing a market conduct examination, the final and published written examination report, or all documents related to a market conduct examination. Related documents may include communications between PHL and any relevant insurance regulator, documents produced in response to demands made by any relevant insurance regulator, or non-public and/or unpublished drafts of market conduct examinations. It is also unclear what is meant by "dated or created" as "created" injects a potentially unknowable variable into the Request (i.e. PHL may not know when a particular "market conduct examination" was created). Because it is unclear what documents Windsor seeks, and what the Order thus requires, PHL is unable respond to Request for Production 32 as it is drafted.

More importantly, Request for Production 32, as drafted, appears to encompass *any* market conduct examination that contains any reference to or examines policies happening to meet the criteria of having a face amount of $4 million or more insuring persons age 75 or older. In the market conduct examination of Beneficial Life Insurance Company, the State of Utah Insurance Department reviewed "15 randomly selected individual life insurance and annuity policies issued in Utah during the examination period." Exhibit B, p. 4. The aforementioned

11

market conduct examination performed by the California Department of insurance was conducted via "random selection." *See* Exhibit C.  As such, it is altogether possible, if not likely, that a market conduct examination could encompass examination of policies with a face amount of $4 million or more insuring persons age 75 or older, even if those policies (or that criteria) were not the target or subject of the examination.  While market conduct examinations may be narrowly tailored to meet an insurance regulator's goals, it is not uncommon for such examinations to be conducted by random selection.  Thus, *any* market conduct examination concerning life insurance policies issued by PHL likely would include a policy meeting the criteria of "a face amount of $4 million or more insuring persons age 75 or older."  To respond to the Request as drafted, PHL would be required to review all market conduct examinations from all fifty states, conducted from 2005 to date (to capture reference to 2010 policies included in the Request), and manually comb through every single policy examined for each examination to determine if any of the examined policies had "a face amount of $4 million or more insuring persons age 75 or older."  If such a policy were examined, PHL would be compelled to produce the entire final written report of the market conduct examination (or perhaps all materials related thereto), which is unlikely to yield any useful or relevant information for Windsor's defenses in this case.

Thus, the Court should sustain PHL's Objection to the Order as to Request for Production 32, rule that PHL's objections to that Request are sustained, and that no further response to that Request is appropriate or necessary.

### III.     CONCLUSION

For all of the foregoing reasons, PHL respectfully requests that this Court enter an order sustaining PHL's Objection, finding the Order to be clearly erroneous as to the matters objected to, and amend the Order solely as it relates to Interrogatory 6 and Request for Production 32.

Respectfully Submitted,

SNELL & WILMER, L.L.P.

By: /s/ Mark O. Morris
Mark O. Morris (4636)

Attorneys for Plaintiff

OF COUNSEL:
(*admitted pro hac vice*)

EDISON, MCDOWELL & HETHERINGTON LLP
Thomas F.A. Hetherington, Texas Bar No. 24007359
Jessica L. Wilson, Texas Bar No. 24028230
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
Telephone: (713) 337-5580
Facsimile: (713) 337-8850

## CERTIFICATE OF SERVICE

I, counsel of record in this matter, hereby state that on March 28, 2012, I electronically filed the foregoing **PLAINTIFF'S OBJECTION TO MAGISTRATE'S MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING PART WINDSOR'S MOTIONS TO COMPEL** using the CM/ECF SYSTEM, which will send notification to all attorneys of record.

                                                                   /s/ Mark O. Morris

14783802.1